THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILTON J. BERGERON, Defendant-Appellant.

(No. 56857;

First District (3rd Division)—March 15, 1973.

Kenneth L. Gillis, of Gillis & Rimland, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Mark T. Zubor, Assistant State's Atttorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

The defendant, Wilton Bergeron, was tried by a jury and convicted of the murder of Michael Elderedge. He was sentenced to the penitentiary for not less than 40 nor more than 80 years. His first contention is that he was not proven guilty beyond a reasonable doubt.

In July 1969 ten young people held a drinking party in a motel room in Niles, Illinois. The participants ranged in age from 23, the age of the defendant, to 15, that of the deceased. The description by the State and defense witnesses of the occurrences at the party differed in some respect; however, the dominant role played by Bergeron throughout the evening is clear.

During the course of the party Bergeron and a friend, Nicholas Davis (who was also indicted for the murder but who testified for the State) began throwing their knives into the furniture, the walls and the door of the room. Bergeron's knife kept bouncing back from the door and striking Debra Pruitt, who was attending the party with her husband, Robert. She desired to move but Bergeron ordered her to stay where she was.

Shortly thereafter Bergeron became angry with the deceased. According to Bergeron, Elderedge continually annoyed him by commenting upon his long hair and the earring he wore; when Elderedge asked whether he was a homosexual, Bergeron "slugged" him. Witnesses for the State testified that Bergeron struck Elderedge because he refused to drink a can full of gin which Bergeron attempted to force upon him. There was testimony that Bergeron's blow knocked Elderedge unconscious, that he fell to the floor and lay there for some time. Subsequently, Bergeron ordered Davis to take Elderedge into the washroom and straighten him out. Robert Pruitt intervened; he asked Bergeron not to pick on Elderedge since he was young, was drinking, and didn't know what he was doing. Bergeron told Pruitt to sit down and and shut up; he then told Davis to talk with Elderedge.

The Pruitts and others wanted to leave the party but Bergeron stepped to the door, pointed his knife at them and refused to let them go. Later

he relented and the Pruitts departed accompanied by two youths, Arthur Kai and David Polz.

Bergeron's attention then turned to Michael Hack, another 15-year-old boy, who had been drinking beer and had fallen asleep on the bed. Bergeron pulled him up by the hair, asked him what he was doing, struck him in the head and tossed him back on the bed.

Bergeron testified that Elderedge began to annoy him once again; when Elderedge proposed the commission of a homosexual act Bergeron slapped him and he fell to the floor. According to the defense, Elderedge picked up a black-handled knife Davis had been throwing and, while still seated on the floor, lunged at Bergeron. Bergeron attempted to kick the knife away but instead kicked Elderedge, who fell over. As Elderedge arose Bergeron picked up his own knife, tried unsuccessfully to make Elderedge drop his, and then stabbed him. Elderedge fell to the floor and Bergeron stabbed him several more times.

The State's witnesses related a different version of the stabbing. They stated that although Elderedge's remarks may have annoyed Bergeron, his attack did not arise from any threatening action on Elderedge's part. Bergeron grabbed Elderedge who was unarmed, and hit, kicked and finally stabbed him repeatedly. Elderedge's attempt to defend himself was futile. Bergeron even threatened those who tried to restrain him from stabbing Elderedge.

After the stabbing, Bergeron, Davis, and two other men, Timothy Malley and Justino Santiago, left the motel in a car. Bergeron's knife, broken in pieces, was left at the motel. At a filling station Malley and Santiago got out, walked away and attempted to hitch a ride. A police car pulled up; Malley and Santiago spoke to the officers and were returned, handcuffed, to the filling station, where Bergeron and Davis were arrested. In the police wagon, Bergeron asked Davis for his knife. A subsequent search revealed that Bergeron had the black-handled knife hidden in his shoe.

■■ The defendant argues that inconsistencies in the testimony of the State's witnesses created a reasonable doubt of his guilt. It is clear from the testimony that a great deal of drinking took place during the evening. It would be surprising under the circumstances if the accounts given by the witnesses did not contain inconsistencies. Such discrepancies do not destroy the credibility of the testimony of the eyewitnesses, but only go to the weight to be given to it. *People v. Willis* (1970), 126 Ill.App.2d 348, 261 N.E.2d 723.

■ ■■ The positive testimony of one credible witness is sufficient to sustain a conviction. (*People v. Green* (1969), 118 Ill.App.2d 36, 254 N.E.2d 663; *People v. Davis* (1966), 70 Ill.App.2d 419, 218 N.E.2d 3.)

The State produced three witnesses who saw Bergeron stab Elderedge, and their testimony showed that Bergeron acted without serious provocation or threat to his safety. On the other hand, the credibility of Justino Santiago, the sole witness who corroborated Bergeron's testimony was severely shaken. A statement signed by him did not mention Elderedge's alleged references to Bergeron as a homosexual. It conceded, moreover, that he himself was threatened with injury by Bergeron when he tried to restrain him from stabbing Elderedge. The evidence established Bergeron's guilt beyond a reasonable doubt.

Next, the defendant contends that his conviction should be reversed because of numerous trial errors. First among these is the asserted use by the State of perjured testimony by a coroner's pathologist concerning the absence of wounds on Elderedge's hands. It is argued that if there were such wounds Bergeron's testimony that he swung his knife at Elderedge's hands in an attempt to force him to drop his knife, would be corroborated. (Conversely, it could be argued that such wounds would corroborate the witnesses who described Elderedge's attempts to fend off Bergeron's slashes.) On direct examination no inquiry was made as to the presence of these wounds. On cross-examination the pathologist testified that there were no cuts on Elderedge's fingers or hands.

The State furnished a photograph of the deceased which indicated a possible cut on one of his hands. At the conclusion of its case the State, in answer to a defense motion for the production of evidence, said that its police reports did not mention hand injuries but upon inquiry a detective had pointed out a supplementary report which stated that two officers of the sheriff's police force had observed wounds on Elderedge's hands. One of the officers was called as a witness by the defense. His testimony contradicted, in part, the pathologist's testimony. He said that he examined Elderedge's body at the morgue and noticed five wounds in the chest area, some cuts on the inside of the forearm and one on the hand.

■■■ The prosecution must disclose to an accused all evidence favorable to him. (*Brady v. Maryland* (1963), 373 U.S. 83, 10 L.Ed. 215; *People v. Moses* (1957), 11 Ill.2d 84, 142 N.E.2d 1.) It is arguable whether the evidence of the hand wounds was more favorable to the accused than the State. Nevertheless, the defendant does not charge that the State concealed favorable evidence; his complaint is that the State used perjured testimony. Perjury is committed when a person "under oath * * * in a proceeding * * * where by law such oath * * * is required * * * makes a false statement, material to the issue or point in question, which he does not believe to be true." (Ill. Rev. Stat. 1969, ch. 38, par. 32(2)(a).) The defendant did not establish

that the pathologist's statements were knowingly false when made. Moreover, the pathologist gave his opinion at the behest of the defendant; his testimony, true or false, was elicited by the defense. The State is not responsible for answers made by its witnesses to questions asked by an attorney for the accused. *People v. Burage* (1961), 23 Ill.2d 280, 178 N.E.2d 389.

Second, Bergeron charges that the State employed illegal deception regarding an agreement with his accomplice, Nicholas Davis, and unfairly restricted the cross-examination of this witness. On direct examination Davis testified that no promise had been made to him by an assistant State's Attorney concerning special treatment in his pending case. He stated that he chose to testify for the State of his own free will. On cross-examination he was asked if anyone else had informed him that the murder charge against him would be dropped if he testified for the State. The trial judge sustained the prosecutor's objections to the pertinent questions. On the following day the prosecutor confessed error and Davis was recalled to the stand. He testified that although he had never talked to an assistant State's Attorney, his own attorney informed him that the State would drop the murder charge and he would be free. When asked about his previous testimony he explained that when he made the statement, that he expected to be tried for murder, he thought the trial would take place. His attorney, however, later testified that Davis was told prior to his taking the witness stand that he would not be tried.

■■■ It was error to sustain the State's objections to questions which might have revealed Davis' knowledge about an agreement with the State. Showing a witness' interest, motive or bias is a proper means of impeachment, and the widest latitude in cross-examination is permitted for this purpose. (*People v. Jackson* (1969), 116 Ill.App.2d 304, 253 N.E.2d 527.) This is particularly true when the witness is an accomplice. (*People v. Chaffin* (1969), 115 Ill.App.2d 1, 254 N.E.2d 72.) However, the error was remedied by permitting Davis to be recalled and the questions answered the following day. Only one witness testified between the time he left the stand and the time he was recalled. The jury was informed of Davis' expectation of release and it had the opportunity of considering this factor in judging his credibility. The defendant was nowise harmed by the initial error.

■■ During the cross-examination of Robert Pruitt, who testified for the State, the defense produced the black-handled knife which was thrown by Davis during the party and found by the police in the possession of the defendant, and requested that it be marked as an exhibit. The prosecutor objected on the ground that a sufficient foundation had

not been laid. The objection was sustained. A defendant is entitled to all reasonable opportunities to present evidence which might tend to create a doubt as to his guilt. (*People v. Cole* (1964), 30 Ill.2d 375, 196 N.E.2d 691.) The question before the court was not whether the knife could be admitted into evidence, but only whether it could be marked as an exhibit so that Pruitt could be questioned about it. For this limited purpose a foundation was not required. The court's ruling, however, did not prejudice the defendant since the questioning of Pruitt disclosed that he was unable to recall any identifying characteristics of the knives used at the party, and the knife was subsequently admitted into evidence as an exhibit of the State.

■■■ The defendant's counsel sets forth a group of questions he asked during the trial to which the judge sustained objections. The defendant claims to have been seriously prejudiced because answers were permitted to somewhat similar questions propounded by the prosecution. The purpose of review in a criminal case is not to determine whether the record is perfect, but rather to decide whether the defendant has had a fair trial under the law and to determine whether his conviction is based upon evidence establishing his guilt beyond all reasonable doubt. (*People v. Conrad* (1967), 81 Ill.App.2d 34, 252 N.E.2d 713; *People v. Haygood* (1965), 60 Ill.App.2d 70, 208 N.E.2d 373.) The record does not disclose any error in the court's rulings which was sufficiently detrimental to the defendant to necessitate a new trial.

■■ The defendant contends that error was committed by the prosecution displaying bloody clothing before the jury. Following the completion of the State's case, the defendant's counsel moved for a mistrial; he charged that during the trial the State permitted a cardboard box containing the bloody clothing of the deceased to remain open under the counsel table in the view of the jury. Only one article from the box, the deceased's pants, was introduced into evidence. The record does not substantiate the contention that the jurors could see into the box and observe the other clothing. Obviously, the trial judge determined that no prejudice had occurred, for he denied the defendant's motion. When the defendant first noticed the presence of the allegedly prejudicial box of clothing he made no objection. Rather, he allowed this condition to continue for the five days of trial. Under the circumstances it cannot be said that the trial court erred in denying the motion for a mistrial.

■■■ The defendant complains that the court erred in refusing his instruction No. 1 (I.P.I. No. 27.01) and in giving the State's instruction No. 15 (I.P.I. No. 25.05), both of which dealt with the propositions the State had to prove to sustain the charge of murder. The defense instruction was substantially identical to that offered by the State, except that

it contained the additional requirement that in order for the defendant to be convicted it must be established that he "did not believe that circumstances existed which justified the use of the force which he used." The defendant contended that he stabbed Elderedge in self-defense, hence the issue of whether or not his belief that the force he used was justified, was proper for the jury's consideration. That issue was set forth in the State's instruction No. 16 (I.P.I. No. 24.06) which stated:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend him against the imminent use of unlawful force.
>
> However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself."

Particular instructions need not contain all the law on a given subject, if the instructions as a whole fully and fairly cover the law. (*People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55; *People v. Jackson* (1969), 116 Ill.App.2d 304, 253 N.E.2d 527.) The State's instruction No. 16 apprised the jury of the law governing the justifiable use of force, and when read with the State's instruction No. 15 adequately set out the law of the case. Therefore, the defense instruction No. 1 was properly refused.

■■ It is asserted that serious error was committed because of the prosecutor's remarks to the jury in closing argument. The chief of these was his reference to the defendant as an "ex-con." It is contended that this was an inflammatory expression which diverted the attention of the jury from the true issues in the case. Bergeron chose to testify in his own behalf and his prior criminal record had been received in evidence, and the jury could legitimately be reminded of it since it bore upon his credibility and the weight to be accorded his testimony. Although the expression "ex-con" does not carry a favorable connotation, neither did it incorrectly state the evidence so as to unduly injure the defendant.

■■ We have considered the defendant's further assignments of error concerning the prosecutor's remarks and find nothing that could be deemed prejudicial to him. The statements to which the defendant objects rarely exceeded the drawing of legitimate inferences from the facts and did not transgress the bounds of proper argument.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.