**People of the State of Illinois, Plaintiff-Appellee, v. William Charles Watts, Defendant-Appellant.**

**Gen. No. 10,936.**

Fourth District.

October 31, 1968.

Phillip F. Fishman, of University City, Missouri, for appellant.

Charles J. Ryan, State's Attorney, of Jacksonville, for appellee.

TRAPP, J.

At a jury trial defendant was convicted of voluntary manslaughter upon an indictment charging such offense under chapter 38, § 9–2(a), Ill Rev Stats 1965, i. e., killing under passion resulting from serious provocation without lawful justification. No other offense was charged. A post-trial motion, having been denied, defendant appeals through diligent counsel appointed subsequent to the trial.

Issues raised upon this appeal include: (1) That a statement made to the police was admitted into evidence in violation of defendant's constitutional rights in that there were insufficient warnings under the rule of Miranda v. Arizona, 384 US 436, 16 L Ed2d 694, 86 S Ct 1602; (2) that a minor, aged 20 years and some months, is without capacity to waive either his right to counsel prior to police interrogation, or his right to remain silent during such interrogation; (3) that there was a failure to prove the corpus delicti other than through the defendant's statement alleged to be erroneously admitted into evidence; and (4) that defendant was not proven guilty beyond a reasonable doubt in that under the evidence defendant was either guilty of murder, or that the killing was in self-defense.

The events and details of the homicide appear only through the lips of the defendant in his statement made to police and admitted into evidence, and through his testimony at the trial. Defendant was aged 20 years and some months, and resided at the home of his mother. The victim, Wyatt, had formerly lived with the mother of the defendant and continued to return from time to time to stay at the home with her for various periods. It appears that he had arrived on the preceding evening and stayed overnight. So far as is shown in the record, no other person was present in the home at the time of this event.

38

The homicide was first reported at about noon on Sunday, November 6, 1966, by a call for an ambulance to the home in question. The ambulance people found defendant present and he pointed out the whereabouts of Wyatt. It appears that Wyatt died at about that time, and that when defendant was told that the victim was dead he left the home, although he was not observed to do so. Within a short time the defendant called the police stating his name, where he was and saying that he was in trouble. Upon inquiry as to the nature of the trouble he stated that a man had threatened him with a knife and that defendant had shot him. Defendant waited at the public telephone until police came for him.

Within some three hours defendant made a statement to police officers, taken in question and answer form by a court reporter. His testimony at the trial is in substantial accord with the statement. The issue of proof of guilt requires statement of the facts.

At an unspecified time, after 9:30 a. m., defendant went into the kitchen for a sandwich. Wyatt was then at the kitchen table preparing chicken for dinner and he asked defendant to put away some groceries and dispose of some trash. Defendant said that he would, but first returned to the living room to read the paper and listen to records. At a time again unstated, defendant returned to the kitchen whereupon Wyatt seized him by the collar, choked him and thrust him against the wall and threatened defendant with a butcher knife, saying that he would cut defendant's throat. Defendant states that he worked free from Wyatt, went to the adjoining bedroom, took a key from his wallet, unlocked a chest, removed a box containing a handgun and removed the gun from the box; that Wyatt approached defendant in the bedroom holding a knife and saying that he would kill or cut the defendant; that defendant fired twice and that Wyatt went into the next bedroom and collapsed on the floor.

Defendant said that after being told of it, he recalled throwing the gun and knife onto the top shelf of a closet in the bedroom first described. Defendant disclaimed any intent to kill Wyatt, but that he just shot at him. Later, it appearing that Wyatt was "sick," defendant called an ambulance.

The autopsy disclosed that one bullet made a hole in the heart and lodged in the spine, and that a second passed through Wyatt's cheek, lodging in his denture. Competent ballistics testimony showed that one bullet was fired from defendant's gun, that the second bullet was of the same caliber but too mutilated for comparison purposes. The investigating officer testified that the gun was found under some blankets and other items on the top of the closet shelf. At the trial there is no testimony concerning the finding of a knife near the gun. The record shows that at the preliminary hearing the same officer testified to finding a knife on the kitchen table, but that there was no knife where the gun was discovered. At the trial defendant identified a kitchen knife as the one held by Wyatt, but the record does not show from whence it was obtained, or where it was held pending the trial.

Upon consideration of the contention that there was not a sufficient warning of his right to counsel, and to remain silent prior to and at the time of making the statement to the police, we find that the motion to suppress such statement in the trial court was expressly limited to the issue of defendant's mental capacity to make a statement. The record shows that defendant's counsel stated that he believed that a sufficient warning had been given, and such record further contains testimony by the officer first taking the defendant into custody that defendant was advised of his right to an attorney, including the right to have one appointed if he was indigent. It appears that such warning was repeated in various forms upon several occasions, including the time when the statement was taken before a court reporter. At a preliminary hearing defendant did

request appointment of counsel and the public defender was appointed.

■ It is strongly urged that the mere fact of minority alone creates a want of capacity to waive the right to counsel, or to waive the right to remain silent when questioned by police. Such proposition is not the rule. The United States Supreme Court in In re Gault, 387 US 1, 18 L Ed2d 527, 87 S Ct 1428, discussed the right of counsel in juvenile delinquency proceedings concerning a 15-year-old, and the necessity that the parent and the juvenile be advised of the right to counsel. The Court holds that either the parent or the juvenile may waive the right to counsel, saying (18 L Ed2d 527 at 554) :

> "If they were unable to afford to employ counsel, they were entitled in view of the seriousness of the charge and the potential commitment, to appointed counsel, *unless they chose waiver.*" (Emphasis supplied.)

The Supreme Court of Illinois in People v. Harden, 38 Ill2d 559, 232 NE2d 725, determined that a minor who has been adequately advised of the right to counsel may waive such right, and that there is no constitutional duty to force a lawyer upon him. Upon the issue of defendant's capacity to make an understanding waiver of his right to counsel, and his right to remain silent when questioned, it is noted that neither the testimony upon the motion to suppress the statement, nor defendant's testimony during the trial, contains a statement or claim of want of understanding of the rights waived in the proceedings.

■ The same doctor gave psychiatric testimony, both at a hearing upon defendant's competency to stand trial and in behalf of defendant during the trial. It disclosed a history of prior stays at State mental hospitals for various periods, essentially for emotional problems. The record does not disclose any legal commitment of the defendant. He was last discharged some three years prior

41

to the shooting. A psychiatric examination made shortly after the shooting disclosed that defendant could read adequately, that on tests administered he made an average score which was a substantial improvement from the score upon such test when last under treatment. He was described as being well-oriented, cooperative and with no present symptoms of psychosis. The statement in evidence shows that the defendant, when asked, stated that he wished to make a statement, and an officer present testified that the defendant said there was no reason why he should not make the statement. We have examined the record and it supports a conclusion that in the several proceedings defendant was alert and understood that which transpired. During a recess of the trial he sketched a floor plan of the house and illustrated his testimony from such plan. Scrutiny of the record suggests nothing to infer that defendant was without understanding.

██ Having contended that it was error to admit defendant's statement into evidence, it is further argued that there was a failure to prove the corpus delicti without the benefit of evidence taken from such statement. In homicide the proof of corpus delicti includes the two elements, proof of the fact of death, and proof of the fact that death was produced by the criminal agency of some person. The People v. Manske, 399 Ill 176, 77 NE2d 164; People v. Bailey, 56 Ill App2d 261, 205 NE2d 756. This record, however, shows adequate evidence of the corpus delicti without consideration of any matter from the statement: Wyatt was shot in the heart; the bullet came from defendant's gun which was later found under divers items at the back of a closet shelf in a room apart from where Wyatt lay; that Wyatt said to the ambulance driver, "I been shot," and finally, defendant's telephone call to the police, including his statement that he had shot a man. This was a spontaneous, volunteered statement not within the rule concerning Miranda warnings. 384 US 436, 16 L Ed2d 694 at 726, 86 S Ct 1602.

42

It is urged that there was a failure to prove guilt beyond a reasonable doubt founded upon the proposition that the only testimony upon the occurrence is that of the defendant, and that since the prosecution relies upon defendant's testimony concerning the quarrel, the choking and threats with a knife by Wyatt to show the passion resulting from provocation necessary to prove voluntary manslaughter under § 9-2(a), Ill Rev Stats 1965, such testimony must be taken to establish self-defense. It is contended that the evidence in the record shows murder, which was not charged, or exoneration. It is argued that such evidence discloses self-defense as a matter of law under the authority of People v. Williams, 56 Ill App2d 159, 205 NE2d 749. That case, however, differs in that there were witnesses, other than and in addition to the defendant, who testified as to the assault made upon the defendant cab driver when the latter went to the aid of a man being beaten in the street.

 It has been frequently held that the jury is not required to accept defendant's account of the events as conclusive, but may consider surrounding circumstances, and the probability or improbability of the matters testified to by the defendant. People v. Uher, 375 Ill 499, 31 NE2d 936; People v. Wiggins, 12 Ill2d 418, 147 NE2d 80; People v. Shannon, 94 Ill App2d 110, 236 NE2d 369. The jury could choose to disbelieve portions of the testimony. People v. Gajda, 87 Ill App2d 316, 232 NE2d 49.

██ ██ It appears that the jury could have concluded that there was a period of quarreling following Wyatt's request made to the defendant to carry out the garbage, if one takes into account the testimony that he read the paper, but that when he returned to the kitchen, Wyatt, without saying more, started to choke him and made threats with the knife. People v. Stepheny, 76 Ill App2d 131, 221 NE2d 798; People v. Gajda, 87 Ill App2d 316, 232 NE2d 49. There is testimony concerning blood spots found in the kitchen, in some contradiction to defendant's testi-

43

mony that he shot Wyatt in the bedroom. Defendant's counsel argued that defendant returned to the kitchen after getting the gun. Upon response to a question in his statement, defendant stated that he was angry enough to want to shoot Wyatt, but that he did not want to kill him. The issue of self-defense is always a question of fact for a jury under proper instruction, and such decision will not be disturbed unless the evidence is so unreasonable, improbable or unsatisfactory as to suggest a reasonable doubt. People v. Turner, 82 Ill App2d 10, 226 NE2d 667; People v. Owens, 73 Ill App2d 108, 219 NE2d 733. There are no issues raised concerning the instructions given by the court.

The judgment of conviction is affirmed.

Affirmed.

SMITH, P. J. and CRAVEN, J., concur.