THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WALTER SMYTHE, Defendant-Appellant.

(No. 54432;

First District—April 28, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Michael Weininger and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and George Elsener, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Walter Smythe, was indicted for murder after his wife was found dead in their apartment with two knife wounds in her chest. After a jury trial in the Circuit Court of Cook County, the defendant was convicted of voluntary manslaughter, and the court sentenced him to 19 to 20 years in the penitentiary.

The issues on appeal are: (1) whether defendant's testimony of self-defense was sufficient to raise a reasonable doubt of his guilt of voluntary manslaughter; (2) whether admission into evidence of defendant's extra-judicial statements violated his Fifth Amendment privilege; (3) whether evidence of previous attacks by defendant upon deceased was properly admitted into evidence; (4) whether the trial court abused its discretion in allowing cross-examination of defendant and admission of rebuttal evidence to impeach defendant's answers; (5) whether defense counsel's representation of defendant denied defendant's right to a fair trial; and (6) whether the sentence should be reduced by this court.

Defendant testified at his trial that on August 30, 1968, his wife had been drinking heavily, and they got into an argument. When she became abusive and unreasonable, he got his coat to leave, but she came at him with a knife. In the ensuing struggle the knife was twisted around, and she was cut while the knife was still in joint control. He testified he did not know anything about the second cut, as he left immediately with his wife still screaming at him. He also testified he did not return to the apartment after that incident and did not know his wife was dead until his arrest about twelve days later.

The husband of the apartment building manager testified he saw the defendant go out several times the next day, once while carrying out a portable television. Although the defendant denied threatening his wife, two friends of Smythe and his wife, Mr. and Mrs. Bradley, testified they were at the Smythe apartment about two weeks before and the Smythes had an argument, at which time defendant told his wife he was going to kill her. According to defendant's own testimony, after the incident in question he took the knife with him when he left and disposed of it in a sewer. The defendant's employer, Leo Levine, testified that on September 3, 1968, a Saturday morning, the defendant came into his office and said that he had to leave town urgently and asked for his check, which was given to him, whereupon he left.

Defendant was represented at the trial by a lawyer who was appointed to represent him after he had petitioned for a Bar Association attorney. Counsel filed a motion to suppress a confession made immediately after his arrest but withdrew the motion before trial. The motion stated the defendant had not been properly notified of his right to have a lawyer present during the interrogation, and the confession was therefore in violation of his constitutional rights. The confession was similar to the defendant's statement made at trial, except in the confession he admitted stabbing his wife a second time after he had gained complete control of the knife and she persisted in coming at him. The admission into evidence of defendant's confession was not a violation of his Fifth Amendment rights under the *Miranda* decision. However, we do not get to the *Miranda* rule because the defense attorney withdrew his motion to suppress and no hearing was held, therefore there is no basis for his contention that he was denied his constitutional rights. The State's Attorney who took his statement by court-appointed stenographer warned the defendant in the following language:

"ASSISTANT STATE'S ATTORNEY: However, before you say one word I wish to say the following to you which I believe I already said off the record before the Court Reporter got here; that nothing you

have said to any law enforcement officers should force you to talk now. Anything you said up to this point is excused and don't let that cause you to talk to me now unless you wish to talk to me. If you wish to talk to me, you may. And I am now asking you, will you tell me the story of the death of your wife?

SMYTHE: Yes, I will."

The defendant waived his right to counsel before he voluntarily told his story to the assistant state's attorney. There is also a substantial amount of circumstantial evidence. The record showed the wounds inflicted were both deep, penetrating, close to the heart. Both cuts were apparently made by an upward thrust and indicate a use of deliberate force. The record further discloses that Smythe's wife was less than five feet tall and weighed about one hundred fifteen pounds, and it would hardly be necessary for him to stab her twice in self-defense. There is also the evidence of his flight, of disposing of the knife in a sewer, and his statement that he was urgently leaving town. His credibility is questioned by his statement to the assistant state's attorney that he had complete control of the knife when he stabbed her the second time, although on trial he denied any knowledge of the second wound. Then, too, he denied returning to the apartment, although the apartment manager's husband saw him enter and leave several times after the incident.

The contention of the defendant that the alternative defenses of self-defense or accident were inconsistent and therefore prejudicial is without merit. The cases cited for this proposition are not in point. In both *People v. Johnson* (1964), 54 Ill.App.2d 27, and *People v. Tanthorey* (1950), 404 Ill. 520, the facts and the nature of the case made the alternative defenses inconsistent. In the instant case counsel presented some evidence trying to support either accident or self-defense. It was therefore proper to assert them in the alternative.

■■ The issue of self-defense is ordinarily one of fact, and a reviewing court will not disturb the verdict unless the evidence is palpably contrary to the verdict or so unsatisfactory as to justify entertaining a reasonable doubt of the defendant's guilt. (*People v. Parker* (1970), 120 Ill.App.2d 71, 78.) There is abundant evidence to sustain the verdict in the instant case.

■■ The defendant argues that it was prejudicial error to allow testimony concerning defendant's brutal attack on his wife eleven months prior to her death because the judge refused to give an instruction which would allow the jury to consider proof of prior crimes as they relate to design and motive. The deceased's mother was allowed to testify that

eleven months prior to her death, the defendant called her on the telephone and told her how he knocked down a man walking with his wife, and that defendant tried to cut her throat and left her for dead. She said her daughter walked into her apartment during the conversation and her neck was bleeding. This testimony was admissible because it was relevant to defendant's attitude toward his wife and as to whether he was the aggressor. In *People v. Cage* (1966), 34 Ill.2d 530, 533, the court said:

"The general rule, of course, is that evidence of commission of other crimes by an accused, in addition to that for which he is on trial, is inadmissible unless its relevancy in \* \* \* tending to prove design, motive or knowledge is so closely connected with the main issue as to justify admission."

The facts in this case are in accord with that rule. The instruction was properly refused because it dealt with crimes as opposed to unsubstantiated assaults. Here, there is an issue of credibility. The only evidence of the prior assault was the testimony of the victim's mother, and the jury was free to believe or disbelieve her testimony. The rejected instruction dealt with a conviction for which there is no issue of credibility.

Defendant complains that he was improperly cross-examined in regard to prior threats. On direct examination he testified his wife initiated the attack; that she was cut accidentally; and that he did not intend to kill her. It was within the scope of direct examination to cross-examine about prior threats. In *People v. Duncan* (1970), 127 Ill.App.2d 305, the court cited *Marut v. Costello* (1966), 34 Ill.2d 125, 127:

"[C]ross-examination is limited to matters brought out on direct examination, but this rule should not be given a narrow or technical application. The purpose of cross-examination is to obtain the truth."

Furthermore, the latitude allowed in cross-examination is a question of discretion for the trial court. (*People v. Gasior* (1935), 359 Ill. 517, 521.) In view of the testimony elicited on direct examination, questions about previous threats were proper, and the subsequent rebuttal testimony established the existence of those threats to demonstrate to the jury that his intent was to stab the deceased, and that he was the aggressor.

Defendant further complains he was deprived of a fair trial because the caliber of his defense was of such low quality as to be a violation of due process. Specifically, he objects to certain remarks made by his attorney which appear to indicate a lack of diligence and ability. However, when read fairly in context, this inference cannot be maintained.

When presented with a petition for attorney's fees, the judge said, "I regret that I am not able to pay you more, you have done a lot of work in this case, but this is all I have." And during sentencing he stated, "* * * and I think the jury in their judgment in selecting voluntary manslaughter as the crime erred, they should have found him guilty of murder * * *." The inference is clear that the efforts of counsel were considerable and effective.

Finally, the sentence is attacked for being excessive and ignoring the principle of indeterminancy in pronouncing sentence. The court said: "I will sentence this defendant to the Illinois State Penitentiary for a period of not less than nineteen years and not more than twenty years, and judgment is entered on the sentence." This sentence was within the statutory limits but does raise the question of a reasonable spread between the minimum and maximum terms imposed. We are urged to consider the 1968 approved draft of the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing, Alternatives and Principles, which provides:

> "In order to preserve the principle of indeterminancy, the Court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed."

■■ In *People v. Jones* (1968), 92 Ill.App.2d 124, the court found these principles to be sound and applied them to that case. We do not believe the courts are or should be bound to this or any other mathematical formula and agree with the court in *People v. Scott* (1969), 117 Ill.App.2d 344, where it is said that it should be "a guide and not as a hard-and-fast rule." This was followed in *Abernathy v. People* (1970), 123 Ill.App.2d 263. In *People v. Lillie* (1967), 79 Ill.App.2d 174, 179, the court said:

> "Advances in the fields of psychology, psychiatry and sociology have contributed to a greater understanding of the motives underlying the commission of criminal offenses, and the techniques and methods which are of value in the rehabilitation of offenders. The hope of earlier release is a great incentive to a prisoner to participate in the educational and rehabilitation programs provided in modern penal institutions. Excessive minimum sentences, imposed by the courts, may defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished."

■■ We recognize the trial judge had every right to impose the sentence he did, and from the record we note the strong feeling of the court that the defendant should have been convicted of murder, nevertheless the jury convicted the defendant of voluntary manslaughter. In keeping with the holdings of the above cases, we feel it is better practice to have a

reasonable spread between the minimum and maximum sentences, and by virtue of the authority vested in the reviewing courts to reduce sentences, we are hereby modifying the sentence to ten to twenty years and otherwise affirming the judgment.

Judgment modified and affirmed.

ADESKO, P. J., and BURMAN, J., concur.