THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLAYTON ST. PIERRE *et al.*, Defendants-Appellants.

(Nos. 59349-50 cons.;

First District (4th Division)—January 22, 1975.

Paul Bradley and Brenda E. Richey, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Scott W. Petersen, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The defendants were convicted of murder after a jury trial. Clayton St. Pierre was sentenced to a term of 20 to 40 years and Michael Wood was sentenced to a term of 14 to 28 years in the penitentiary. Donald Denic, who was indicted for murder and tried with the defendants, was found not guilty.

The following issues are raised on appeal: Whether the court erred in refusing defendants' request for an accomplice instruction; whether the court erred in submitting an improper instruction to the jury on the elements of proof necessary to find Michael Wood guilty of murder; whether the defendants were denied the effective assistance of counsel guaranteed them under the sixth amendment of the constitution by incompetence and conflict of interest on the part of their attorneys; whether the evidence was sufficient to establish defendants' guilt beyond a reasonable doubt; whether Michael Wood was denied equal protection of the law by section 2—7 of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 702—7(1)) which provides that no boy under the age of 17 or girl under the age of 18 may be prosecuted for an offense under the laws of this state.

Larry Bolton, the State's first witness, testified that at around 2 A.M. on the morning in question, he met Michael Wood, his roommate, at the corner of Buena and Broadway in Chicago. They talked and Michael told Larry to return to their apartment to get Clayton St. Pierre. Michael, however, failed to explain why he wanted St. Pierre.

Larry followed Michael's instructions and returned to his apartment, at 849 West Buena, where he met Jean Ellis, Charles Wood, Clayton St. Pierre, and Donald Denic. Larry told St. Pierre that Michael wanted to see him. St. Pierre walked to the kitchen, took a knife from the cabinet, and put the knife in his pocket. Larry advised St. Pierre that he did not need a knife but St. Pierre did not respond. Denic, St. Pierre, Larry Bolton, and Charles Wood left the apartment and walked back toward Broadway where they met Michael Wood. Michael explained to the group that someone had called his mother "a whore." The group split up, Charles Wood and Larry Bolton proceeded through the alley, and the three defendants proceeded down Broadway.

When Larry Bolton reached the corner of Sheridan and Broadway a fight was in progress. Michael Wood, Donald Denic, and Clayton St. Pierre had surrounded Jim Hawkins, the deceased, and punches were

being thrown. Larry Bolton yelled "pigs" and looked for the police, but he didn't see any. When he turned back to the fight, he noticed that Mr. Hawkins was on the ground and he saw St. Pierre stab him.

Then, a car sitting on Sheridan Road began blowing its horn. Denic and St. Pierre ran by Larry; but Michael Wood walked towards him. He was helping his brother, Charles Wood, who had hurt his knee during the fight. Michael showed Larry a bloody knife and told him to take it, but Larry refused. Larry testified that the knife in Michael Wood's possession was not the same knife that he saw St. Pierre take from their kitchen.

Larry Bolton returned to his apartment. Denic and St. Pierre arrived shortly thereafter, at which time Larry noticed a bloody knife sitting on the kitchen table. Then Michael Wood arrived and asked St. Pierre what he did with his knife. St. Pierre told him that it was in the kitchen sink. Michael Wood stated that he had buried his.

Investigator Toenings testified that he had a conversation with Donald Denic at the police station after Denic's arrest. Denic first denied having any knowledge of the murder, but he later admitted that he had been recruited by Michael Wood to look for a man that insulted Wood's mother. When the trio saw the man on the street later that evening, Denic stated that he saw Clayton St. Pierre stab the man twice.

Patrick Brogan, a Chicago police officer, testifying for the defense, stated that he first saw Mr. Hawkins, the deceased at 1 o'clock on the 18th of October. Officer Brogan testified that he noticed, while talking to Hawkins, that he had a cut in the center of his forehead.

Sergeant Gegner testified that he encountered Hawkins at approximately 11:45 P.M. at the corner of Buena and Broadway. The officer stopped because Mr. Hawkins appeared injured; he suffered from a head or forehead injury. Sergeant Gegner transported Mr. Hawkins to American Hospital where he received medical treatment. When Sergeant Gegner encountered Mr. Hawkins at 2:15 A.M. on October 18, 1972, he was seriously injured and unable to talk.

Mrs. Ruth Wood was the third witness for the defense. She first met Mr. Hawkins at 9 P.M. the corner of Buena and Broadway. Mrs. Wood stated that Mr. Hawkins grabbed her arm and made an illicit proposition to her. However, she pulled away from him and crossed the street. At about 11 P.M. that same evening, Mrs. Wood encountered Mr. Hawkins once again on Buena. She testified that the decedent was talking with three unidentified Negroes. The man was holding a shiny object in his hand. Mrs. Wood entered Broadway Liquors and shortly thereafter Hawkins entered the store, bleeding from a wound on his head. He had a shiny blade in his possession.

Bobby Quintello testified that he was tending bar at 4200 North Broadway. At approximately 8 P.M. that evening, a man, identified by the witness as the deceased, entered the liquor store, went into the washroom, and left. Shortly thereafter, around 9 P.M., the man returned and requested a beer. He was denied service because he appeared to be slightly intoxicated. Bobby Quintello noticed that he was bleeding very badly from a head wound. When Quintello asked the patron to leave and he refused, the police were summoned and they escorted Mr. Hawkins from the premises.

Clayton St. Pierre, the last witness for the defense, testified that at approximately 2 A.M. Larry Bolton entered the apartment and told him that Michael Wood was looking for him. St. Pierre stated that he went to the kitchen, selected a knife from the cabinet and placed it up his sleeve. Then St. Pierre left the apartment, along with the other people who were there, and they met Michael Wood at the corner of Buena and Broadway. Michael Wood told the group that he wanted to talk to the man who had called his mother a whore. Michael Wood, Donald Denic, and Clayton St. Pierre ran to Broadway and Sheridan where they met Hawkins. Michael Wood and Hawkins talked for a few minutes. A fight ensued, and St. Pierre saw Mr. Hawkins approaching him with something shiny in his hand. Mr. Hawkins grabbed St. Pierre, and they wrestled on the ground. Then, St. Pierre pulled his knife out and stabbed Hawkins. When St. Pierre heard Larry Bolton yell "the pigs are coming," he and the others ran back to the apartment. Mr. Hawkins was left on the ground in front of the church.

■■ The appellants argue initially that the court erred in refusing defendants' request for an accomplice instruction. We disagree with this contention. An accomplice is one who could himself have been indicted for the offense either as principal or accessory, and if a witness is not an accomplice under this test, it is not error to give a tendered instruction relative to the testimony of an accomplice. (*People v. Nowak* (1970), 45 Ill.2d 158, 168-69, 258 N.E.2d 313, 318; *People v. Konkowski* (1941), 378 Ill. 616, 39 N.E.2d 13.) There was no evidence in the record that the witness, Larry Bolton, had knowledge or an intent to further the illegal purpose of the defendants in this case. The facts are clear that Larry Bolton merely witnessed a murder. Therefore, the trial court did not err and was not required to give the jury a cautionary instruction on the weight to be given Larry Bolton's testimony.

■■ The appellants next contend that the court erred in submitting instruction No. 15 to the jury on the elements of proof necessary to find Michael Wood guilty of murder. The error made by the State in instruction No. 15 was putting Clayton St. Pierre's name in place of

Michael Wood's name in the third paragraph of the instruction. The appellants contend that the question of Michael Wood's justified use of force was thereby taken from the jury when the name substitution occurred. In considering the adequacy of instructions, a reviewing court must take all of them as a unit to ascertain if they fully and fairly cover the law. (*People v. Bradley* (1973), 12 Ill.App.3d 783, 789, 299 N.E.2d 99; *People v. Bergeron* (1973), 10 Ill.App.3d 762, 770, 295 N.E.2d 228; *People v. Juve* (1969), 106 Ill.App.2d 421, 427, 245 N.E.2d 293.) We have examined all the instructions and are satisfied that they adequately set out the law governing the case. Therefore, we find no error merely because the defendants' names were substituted on the instruction.

■■■ The defendants submit that they were denied the effective assistance of counsel guaranteed them under the sixth amendment of the Constitution by incompetence and conflict of interest on the part of their attorneys. The defendants argue that the failure of Mr. Weber to move to sever Denic, or to suppress the statement Denic made to the police, coupled with his failure to object to the improper jury instructions, amounted to a caliber of representation that blotted out the essence of a substantial defense. In *People v. Dixon* (1971), 2 Ill.App.3d 279, 276 N.E.2d 42, the court states at page 284:

"Where a defendant was represented by the counsel of his choice, a conviction will not be reversed for inadequate representation unless it can be shown from the record that the representation was of such low caliber as to amount to no representation at all, or that it was such as to reduce the trial to a farce."

In the case under review, Michael Wood was represented by Mr. Weber, an attorney he retained. We do not feel, however, that Wood's representation was of such low caliber as to amount to no representation at all, nor do we feel that his representation reduced the trial to a farce. We are of the opinion that defendants' contentions, with respect to counsel's conduct at trial, relate to matters of judgment and discretion, and a review of counsel's competence does not extend to areas involving the exercise of judgment, discretion, or trial strategy. (*People v. Wesley* (1964), 30 Ill.2d 131, 136, 195 N.E.2d 708; *People v. Sauber* (1966), 68 Ill.App.2d 133, 142, 214 N.E.2d 918.) Counsel's decisions at trial may have been incorrect, but errors in judgment do not constitute incompetency (*People v. Washington* (1968), 41 Ill.2d 16, 21, 241 N.E.2d 425; *People v. Dixon* (1971), 2 Ill.App.3d 279, 285, 276 N.E.2d 42), nor do differences in tactics between attorneys (*People v. Kinsley* (1973), 10 Ill.App.3d 326, 328, 293 N.E.2d 627). After reviewing the record, we do not feel that incompetence on the part of trial counsel has been demonstrated in this case.

■■ The defendants next submit that Clayton St. Pierre's rights were violated because there was a conflict of interest that existed with respect to his attorney. The defendants argue that Mr. Carey, who represented Clayton St. Pierre and Donald Denic, was put in a situation where he had to allow into evidence a statement made by Donald Denic to the police that exculpated Denic from culpability but inculpated St. Pierre. The statement, which was testified to by Officer Toenings at trial, is as follows:

> "Well, we presented the fact to Denic that he left Jean Ellis' apartment at 10 P.M. on the 17th. He stated that during that night, Michael Wood approached him and Clayton St. Pierre and asked him for some help, that somebody had called Michael Wood's mother a whore. Later, when they saw the man on the street, Michael Wood approached the man followed by Clayton St. Pierre and himself. Denic then stated he saw Clayton St. Pierre stab the man twice."

After the statement was made, the trial judge sustained defense counsels' objections and gave the jury a cautionary instruction, telling them that the testimony was admitted only as to Donald Denic who made the statement. The rule is well settled that separate counsel is required only where the interests of codefendants are in fact antagonistic. (*People v. Durley* (1972), 53 Ill.2d 156, 160, 290 N.E.2d 244, 246; *People v. Ware* (1968), 39 Ill.2d 66, 68, 233 N.E.2d 421, 422.) The defendants represented by Mr. Carey did not have antagonistic defenses. Moreover, the extrajudicial statement made by Denic that is complained about in this appeal was in no way inconsistent with Clayton St. Pierre's testimony at trial in which he admits stabbing Mr. Hawkins. The prejudice to St. Pierre was minimal, if at all, since Denic's extrajudicial statement merely corroborated St. Pierre's incriminating testimony. Furthermore, the trial judge instructed the jury to consider the testimony only with respect to Denic. We feel the defendant has failed to demonstrate that a conflict of interest actually existed on the part of his attorney, because the extrajudicial statement of codefendant Denic could be no more inculpatory than the defendant's testimony. Therefore, we will not disturb the verdict of the jury on the basis of conjectural or speculative conflicts between the interests of codefendants argued for the first time on appeal. *People v. Durley* (1972), 53 Ill.2d 156, 160, 290 N.E.2d 244, 247; *People v. McCasle* (1966), 35 Ill.2d 552, 556, 221 N.E.2d 227, 230.

■■ Finally, the defendants contend that the statement made by codefendant Denic deprived them of their sixth-amendment right to cross-examination and confrontation. The defendants rely on *Bruton v. United*

*States* (1968), 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620, and *People v. Clark* (1959), 17 Ill.2d 486, 162 N.E.2d 413, as authority for this position. These cases can be distinguished from the instant case. In *Bruton,* the defendant made no inculpatory statements and in *Clark,* the plaintiff in error denied participating in the crime. However, in the case under review, the defendant admitted stabbing the victim. The differences in the cases relied on by the defendants and the case under review are significant. Therefore, we feel that *Schneble v. Florida* (1972), 405 U.S. 427, 31 L.Ed.2d 340, 92 S.Ct. 1056, the most recent pronouncement of the Supreme Court on this question, is the case to be followed. The court states (405 U.S. 427, 430, 31 L.Ed.2d 340, 344):

> "The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error."

After an independent examination of the record, it is our opinion that the testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury. *Brown v. United States* (1973), 411 U.S. 223, 36 L.Ed.2d 208, 93 S.Ct. 1565; *Schneble v. Florida* (1972), 405 U.S. 427, 31 L.Ed.2d 340, 92 S.Ct. 1056.

■■■ Defendants' next contention is that the evidence raised the issue that Clayton St. Pierre stabbed Jim Hawkins while acting in self-defense. It is true, as the defendants point out, that once "some evidence" of self-defense is offered by the defendant, the burden devolves upon the State to prove beyond a reasonable doubt that issue along with the other elements of the offense. (Ill. Rev. Stat. 1971, ch. 38, §§ 3—2, 7—14.) The issue of self-defense in a criminal case, however, is one of fact for the jury (*People v. Johnson* (1969), 108 Ill.App.2d 150, 156, 247 N.E.2d 10; *People v. Watts* (1968), 101 Ill.App.2d 36, 43, 241 N.E.2d 463), and a reviewing court will not disturb the verdict unless the evidence is palpably contrary to the verdict or so unsatisfactory as to justify entertaining a reasonable doubt of defendant's guilt. (*People v. Smythe* (1971), 132 Ill.App.2d 685, 688, 270 N.E.2d 431; *People v. Parker* (1970), 120 Ill.App.2d 71, 78, 256 N.E.2d 67.) The evidence was not conflicting in the instant case. Furthermore, the defendant admitted stabbing Jim Hawkins. We concluded, after reviewing all the evidence, that the jury's

finding that the evidence did not support the defendants' theory of self-defense was a proper one.

The defendants' next contention is that the evidence was insufficient to establish that Michael Wood stabbed Jim Hawkins or that he was accountable for Hawkins' death. It is well established in Illinois that the testimony of one eyewitness, if it is positive and the witness is credible, is sufficient to sustain a conviction. (*People v. Williams* (1973), 14 Ill.App.3d 73, 302 N.E.2d 108; *People v. Bracey* (1970), 129 Ill.App.2d 57, 262 N.E.2d 748.) Larry Bolton testified, and his testimony was uncontroverted, that Michael Wood participated in the altercation that resulted in Hawkins' death. Moreover, he saw Michael Wood with a bloody knife in his possession shortly after the fight ended. The evidence was sufficient for the jury to conclude that the defendant's guilt was established beyond a reasonable doubt.

■■■■ The defendants contend if the jury's verdict was based on the theory that Michael Wood was accountable for Clayton St. Pierre's actions in stabbing Jim Hawkins, the State has failed to offer sufficient evidence to prove beyond a reasonable doubt that Michael Wood was responsible. The criteria necessary to establish that one person is accountable for another's actions are set forth in section 5—2 of the Criminal Code (Ill. Rev. Stat. 1971, ch. 38, par. 5—2). In our criminal law, it is well established that proof of a common purpose need not be supported by words or agreement but can be drawn from circumstances surrounding commission of an act by a group. (*People v. Bristow* (1972), 8 Ill.App.3d 805, 810, 291 N.E.2d 189; *People v. Hubbard* (1972), 4 Ill.App.3d 729, 733, 281 N.E.2d 767.) The evidence is clear and uncontroverted that Michael Wood was present at the scene of the crime, participated in the altercation that culminated in Jim Hawkins' death, and left the scene of the murder when he heard Larry Bolton yell "pigs." This conduct is inconsistent with the behavior of a person similarly situated and innocent of a crime. (*People v. Thicksten* (1958), 14 Ill.2d 132, 150 N.E.2d 813.) Therefore, Wood's conduct supported an inference that a common understanding or design existed between the defendants. So even if Wood did not deliver the fatal blow, where two or more defendants have a common design to accomplish an unlawful purpose, the act of one is the act of all and all are equally guilty of whatever crime is committed. (*People v. Nowak* (1970), 45 Ill.2d 158, 258 N.E.2d 313; *People v. Hubbard* (1972), 4 Ill.App.3d 729, 734, 281 N.E.2d 767.) We hold that the evidence was sufficient to support the jury's verdict finding Michael Wood guilty either as a principal or as a person accountable.

■■ Finally, the defendants argue that Michael Wood was denied

equal protection of the law by section 2—7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, § 702—7(1)), which provides that no boy under the age of 17 or girl under the age of 18 may be prosecuted for an offense under the laws of this state. Michael Wood, at the time of the commission of the offense in this case, was 17 years of age, but was considered an adult for the purpose of criminal prosecution. The defendants contend that the State violated a statutory prohibition in the previously mentioned statute, when it prosecuted Michael Wood as an adult. The defendant, however, was not denied equal protection of the law. In *People v. Pardo* (1970), 47 Ill.2d 420, 265 N.E.2d 656, the supreme court found that age and differences between the sexes formed a proper basis for legislative classification so that statutory prohibition did not deny the accused equal protection of the law. More recently, in *People v. Ellis* (1974), 57 Ill.2d 127, 311 N.E.2d 98, the supreme court again passed on this issue. Mr. Justice Goldenhersh said:

> "* * * [T]he failure to consider defendant eligible for treatment as a minor under its provisions did not deprive him of equal protection of the laws." 57 Ill.2d 127, 134.

This position has been consistently followed by recent Illinois cases (*People v. McCalvin* (1973), 55 Ill.2d 161, 167, 302 N.E.2d 342, 346; *People v. Little* (1974), 18 Ill.App.3d 1081, 311 N.E.2d 173; *People v. Good* (1974), 18 Ill.App.3d 374, 309 N.E.2d 648), and we see no reason why this position should not be followed in the case under review.

For the foregoing reasons, the judgment is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.