**The People of the State of Illinois, Plaintiff-Appellee, v. George A. Jones, Defendant-Appellant.**

Gen. No. 50,659.

First District, Fourth Division.

December 31, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Stewart Scudder, Frederick F. Cohn, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Eldridge Hersey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Murder.[1]

JUDGMENT

After a jury trial, defendant was found guilty and sentenced to a term of 50 to 100 years.

CONTENTIONS ON APPEAL [2]

1. Defendant was denied a fair trial because the jury heard repeated references to defendant's statements to the police, although subsequently the court refused to admit these statements into evidence.

2. The court erred in failing to instruct the jury as to the offense of manslaughter.

---

[1] Ill Rev Stats (1963), c 38, § 9–1. Murder.

(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

. . .

(b) Penalty.

A person convicted of murder shall be punished by death or imprisonment in the penitentiary for any indeterminate term with a minimum of not less than 14 years. . . .

[2] This case was briefed on appeal by the Public Defender who had been appointed to represent defendant for this purpose. When the case was set for oral argument, there was a substitution of privately retained counsel. We rescheduled the oral argument for a later date, and allowed time for the filing of additional abstracts and briefs by the new attorney.

3. The instruction given to the jury on drunkenness was erroneous and misleading.

4. The court erred in failing to inform the jury that certain evidence had been stricken.

5. It was error to allow the State to rehabilitate a witness through the use of leading questions.

6. The State's Attorney made improper and prejudicial comments during his closing argument.

7. The sentence is excessive.

EVIDENCE

*Helen Blackman,* for the State.

She is defendant's girl friend. Defendant spent the night of May 2, 1964, in her room at 5150 S. Indiana Avenue. They arose shortly after 8:00 a. m., May 3, and together with five other residents of the flat sat around laughing and talking. Defendant woke the decedent (Andrew Johnson) at 10:00 a. m. and sent him to the store. Decedent returned with a pint of port which the eight of them consumed. Decedent went for another fifth of port and, after returning with it, they again watched television. Everyone was congenial.

Thereafter, deceased took a nap. Myrtle Britton, also a resident of the flat, came to see the witness to have her hair done, so the ladies went to the kitchen. Then decedent wandered back into the room where defendant had continued watching television. Defendant ordered him out, but the witness countermanded the order, as it was her room. The decedent walked away and defendant came out of the room with a butcher knife. She and Myrtle ran after defendant, but defendant had stabbed decedent before they could stop him.

She has no recollection of either man having a wine bottle at that time.

*Myrtle Britton,* for the State

She corroborated the testimony of Helen Blackman, adding that after defendant had stabbed decedent once, he had drawn back again when she and Helen grabbed

5

his arm; that he then let her take the knife from him; that she called the police and gave them the knife when they came about five minutes later; that she saw nothing in decedent's hands at the time of the stabbing.

*Dr. Eugene Tapia,* for the State

He is the doctor who performed the autopsy on decedent. His examination revealed both a stab wound and surgical incisions. In his opinion, the stab wound was the cause of death.

*Police Officer David Durkin,* for the State

At 10:55 a. m. on May 3, 1964, he received a call that there had been a stabbing at 5150 South Indiana Avenue. He went to that address, where he saw the decedent lying in a pool of blood in his bedroom. He had a conversation with Myrtle Britton and Helen Blackman, and was told that defendant had stabbed the decedent. Myrtle gave him a knife which she said had been the weapon used to wound decedent.

*Police Officer William Strocchia,* for the State

At 1:30 a. m., May 4, 1964, he went to a house at 5150 South Indiana Avenue, Chicago, Illinois, talked to a woman named Blackman in front of the house, entered the rear of the house, arrested defendant and took him to the police station. He didn't know whether or not defendant was sick at the time of his arrest.

*Police Sergeant Richard Dwyer,* for the State

On May 4, 1964, he took statements from Myrtle and Helen at the police station in defendant's presence. After the women finished, defendant said their statements were true. Thereafter, defendant consented to give him a written statement. At the time defendant signed this statement, he had been in custody for sixteen hours. The witness was also present when defendant gave a second statement to Assistant State's Attorney Carroll.

*Asst. State's Attorney Laurence Carroll,* for the State

On May 4, 1964, he took a statement from defendant in a Chicago police station. He identified him in court.

6

When the statement was taken, Sergeant Dwyer, a court reporter, and defendant were also present. He identified a document, marked for purposes of identification, as an accurate transcript of that statement. When this statement was taken, defendant had been in continuous police custody for 22 hours and had not been taken before a judicial officer. Defendant was charged with murder, but, so far as the witness knew, had not been advised of his constitutional rights.

*Paul Esling*, for the State

He was the court reporter who transcribed the statement described by Carroll. He did not recognize defendant in court. He could not locate any place in his notes which indicated that defendant had been asked, or consented, to give a statement.

*Asst. State's Attorney Paul H. Knott*, for the State

He gave defendant a copy of the statement on May 7 in the police station. He read the statement to defendant while defendant followed the text in his copy and asked for additions or corrections. He did not tell defendant that the statement would be used against him, nor did he advise him concerning his constitutional rights. Defendant signed the statement.

*Defendant*, on his own behalf

(Defendant did not contradict Helen Blackman's testimony on any material point, but emphasized the circumstances immediately preceding the stabbing.)

He was fixing a ham sandwich with a knife when decedent entered the room. Decedent took the bottle containing the remaining wine which defendant had intended to save for Helen. When defendant went after decedent, it was with the intent to take back the bottle. He grabbed decedent, but wasn't conscious of having the knife. The women ran after him, and Myrtle grabbed his hand, saying, "Give me the knife before someone gets hurt." He didn't know what she was talking about, and didn't know what had happened to decedent.

7

Defendant had known decedent for several years and they had always been friends.

OPINION

■ (1) Defendant contends that he was denied a fair trial because the jury heard references to statements given to the police by defendant, even though the court refused to admit these statements into evidence. We see here no denial of defendant's constitutional right to a fair trial, since the court sustained the only objection defendant made to this evidence.

Defendant did not elect to move to suppress the confessions prior to trial. Nor did he object to any of the testimony about which he now complains; nor did he ask for a hearing outside the jury's presence to determine whether the confessions could be properly admitted. On the contrary, he sat by idly while the testimony was taken, and then cross-examined each of the witnesses. Finally, when the statements were offered into evidence, he objected to their admission and his objection was immediately sustained. Thereafter, he made no request that the court strike the references to the statements. Furthermore, defendant's written motion for a new trial, containing a dozen different points, did not mention any error in relation to the statements.

The court is not charged with the duty of planning the defense. At no time was it suggested to the court that defendant wanted the testimony in question to be kept from the jury. In the absence of an application, the trial judge would have exceeded his authority had he excluded the evidence as it progressed.

■■ In our adversary system of justice, a defendant will not be heard to complain that he was denied that which he never requested. See People v. Caldwell, 39 Ill2d 346, 236 NE2d 706. Moreover, as a general proposition, defendant cannot assign error to that which he acquiesced in and gave the court no opportunity to correct.

8

People v. Sotos, 26 Ill2d 460, 187 NE2d 245; People v. Boozer, 12 Ill2d 184, 15 NE2d 619. Defendant does not suggest in this court that we notice this alleged prejudice under the plain error doctrine, and we do not think it would be appropriate for us to do so in this case. Supreme Court Rule 615(a); Ill Rev Stats (1967), c 110A, § 615(a).

■■ (2) Next, defendant contends that the jury should have been instructed on the included offense of manslaughter. The fact that the instructions were not abstracted, leaves this point outside required review. People v. Woodruff, 9 Ill2d 429, 137 NE2d 809. And the fact that no instruction on manslaughter was tendered, left the subject outside the scope of instructions required of the trial court. People v. Caldwell, 39 Ill2d 346, 355, 236 NE2d 706, and cases there cited. Overlooking these matters, however, we find no evidence which would support a conviction for the crime of manslaughter, either voluntary or involuntary. See Ill Rev Stats (1963), c 38, § 9–2 (voluntary manslaughter); § 9–3 (involuntary manslaughter); and §§ 7–1, 2, 3 (justifiable use of force in defense of person or property).

There is nothing to indicate that defendant reacted to "serious provocation" (section 9–2(a)). No evidence tends to demonstrate that he believed he was defending person or property (section 9–2(b)). Nor was there evidence to show that the killing resulted from reckless conduct on the part of defendant (section 9–3(a)). Accordingly, an instruction on manslaughter would have been improper. People v. Marsh, 403 Ill 81, 85 NE2d 715; People v. Latimer, 35 Ill2d 178, 220 NE2d 214.

■ (3) Again defendant complains about the jury instructions, even though they have not been abstracted. He contends that the instructions given on the subject of intoxication were improper, misleading, and prejudicial. We do not agree. Defendant's tendered instruction No. 16 (which was given) informed the jury that intoxication

9

is no defense to a crime unless it negatives the existence of the requisite mental state. The State's tendered instruction No. 12 (also given) cautioned the jury that while voluntary drunkenness may be used to negative the element of intent when it is extreme, merely being drunk or intoxicated is not a sufficient defense. Taking these instructions together, we believe they contain an adequate statement of the law without prejudicial internal conflict. People v. Hicks, 35 Ill2d 390, 397, 220 NE2d 461; People v. Pearson, 74 Ill App2d 400, 403–404, 220 NE2d 876. The question is not whether defendant was intoxicated, but whether, in the light of the evidence relating to intoxication, he had the requisite mental state for murder.

■■ No one instruction need state all the applicable law on any particular question. We must look at the whole series of instructions to see if they provided guidance for the jury which was neither unfair nor incomplete. We conclude that the instructions, taken as a unit, were sufficient. People v. Gilbert, 12 Ill2d 410, 147 NE2d 44; People v. Kelly, 8 Ill2d 604, 136 NE2d 785.

■ (4) Next, defendant contends that the court erred in failing to instruct the jury that certain important testimony of Dr. Tapia as to the cause of death, had been stricken, citing People v. Williams, 28 Ill2d 53, 190 NE2d 796. Here we need note only that the court, outside the presence of the jury, had decided that the testimony should be stricken; that thereafter the court afforded the State an opportunity to rehabilitate this witness; that this was done; and that the questioned testimony was permitted to remain in evidence before the jury. In this we find no error.

■ (5) As a corollary proposition, defendant argues that this witness was rehabilitated through the use of leading questions by the State, but this contention is, likewise, without merit, as defendant did not object to

the form of the questions and therefore must be deemed to have waived the point.

■ (6) Defendant contends that the State's closing argument contained improper and prejudicial comments. We have examined the abstract carefully and find that it sets forth this part of the record only in the form of conclusions and defense argument. Moreover, again defendant failed to raise any objection at the trial. We believe, however that the State's Attorney's remarks to the jury were, in general, supported by the evidence, and were not unfairly prejudicial.

(7) Finally, defendant contends that the sentence was excessive.

■ ■ When the sentence is within the limits prescribed by statute, our power to reduce sentences (Supreme Court Rule 615(b); Ill Rev Stats (1967), c 110A, § 615(b)) should be wielded with a very considerable caution, for the trial court has, ordinarily, the superior opportunity to determine a fitting punishment. People v. Taylor, 33 Ill2d 417, 211 NE2d 673. We cannot say that the punishment was not proportioned to this senseless taking of another's life. People v. Smith, 14 Ill2d 95, 97, 150 NE2d 815. See also People v. Caldwell, 39 Ill2d 346, 236 NE2d 706, in which a sentence of 50 to 100 years (identical to the sentence in the case at bar) was affirmed.

■ Nor are we persuaded by defendant's arguments concerning probation and parole which are not to be considered as matters of right. People v. Thompson, 381 Ill 71, 72, 44 NE2d 876.

DECISION

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and DRUCKER, J., concur.