THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL WHITE, Defendant-Appellant.

(No. 57407;

First District—October 4, 1972.

Jo Anne F. Wolfson, Frederick F. Cohn, and R. Duane Slayton, all of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and Stephen R. Kramer, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

The defendant, Michael White, was charged with attempted murder and aggravated battery. He was tried by a jury in the Circuit Court of Cook County and found guilty of aggravated battery but acquitted of attempted murder. He was sentenced to a term of one to three years.

The issues on review are whether the conviction on one count and acquittal on another are legally inconsistent, whether there was a violation of defendant's constitutional guarantee against double jeopardy, whether one count of the indictment was void because it omitted to state the battery was done "without legal justification," whether the court erred in excluding a document which the defense maintains was probative of the defendant's mental state, and whether the defendant should have been sentenced to probation rather than the term of one to three years.

The defendant and two other blacks, Arlester Brown and Richard Mister, were in a car traveling west on 63rd Street near the Argo-Chicago boundary at 3:00 A.M. on March 29, 1969. Just west of Cicero Avenue they encountered a car driven by William Cummings, an off-duty police

officer, with Kevin Daly as a passenger. Both are white and 22 years old.

There is conflicting testimony about the encounter. Cummings and Daly stated they were cut off several times by the blacks, while the defendant and his two friends contend Cummings pulled up alongside their car several times and "gunned their motor as though they wanted to race," nearly causing a collision.

As the two cars approached 7100 West on 63rd Street they stopped side-by-side as they waited for an on-coming train. The prosecution witnesses, Cummings and Daly, testified the defendant began talking to them and motioned to roll down the window. The defendant allegedly said, "I am going to prove I am a man," or "I am a better man than you." The defendant then displayed a pistol. Cummings replied that he was sorry and backed his car about 25 feet to the rear. He then got out of his car, opening his door half-way, yelled that he was a police officer, and commanded the defendant to throw the gun down and come out of the car. After an exchange of shots initiated by the defendant, Cummings had been hit three times but still managed to get back into his car and pursue the other vehicle, which sped away.

The defendant alleges Cummings pulled up next to his car at the railroad crossing, called out remarks about drag racing, and then began directing derogatory and obscene names at him, including calling him a boy. White said there weren't any boys in the car and asked, "Do I look like a boy to you?" Then he showed his blue steel automatic. According to the defendant Cummings said, "All right. I am sorry," and backed up. Cummings then allegedly shot through the rear window of the defendant's car without warning, narrowly missing one of the occupants. The defendant returned the fire "to protect myself and the people that were with me." After emptying the weapon, they fled in the car. White contended he did not know Cummings was a police officer until he was in custody.

This incident occurred against a background of increasing racial tension in the area. On March 21, 1969, Argo police prevented 35 to 40 white people from going through a viaduct separating Argo and Bedford Park. Later a caravan of whites did go through. That same night a meeting of the black community in Argo took place, at which a paper was displayed which had been distributed in the white community. It was entitled, "How to Kill a Nigger and Not Get Caught." The meeting concerned itself with devising a program of protection for the community. The defendant, a Viet Nam veteran with a sharpshooter's medal, allegedly carried a weapon as a part of this program of self-protection.

The defendant first contends the guilty verdict on the charge of ag-

gravated battery is fatally inconsistent with his acquittal of attempted murder. This conclusion is based on the presumption that the issue was entirely one of credibility: if the jury believed the defendant, it believed he shot Cummings in self-defense. If the jury believed Cummings and Daly, it necessarily rejected the affirmative defense.

■■■ This contention is without merit because the issue is not credibility but whether there was sufficient evidence to prove the element of specific intent to kill, which is required for a conviction of attempted murder. In this case the same set of facts was the basis of two separate and distinct offenses which required different elements of proof. For aggravated battery it was necessary to prove that defendant intentionally or knowingly caused great bodily harm or in the commission of a battery used a deadly weapon. (Ill. Rev. Stat., Ch. 38, sec. 12—4.) To establish the defendant's guilt of the crime of attempted murder it was necessary to prove the additional element of specific intent to commit murder. (Ill. Rev. Stat., Ch. 38, sec. 8—4.) The testimony of the defendant was that he did not try to kill Cummings: "No, I had no thought to kill him." Arlester Brown testified: "If we wanted to get them we could have easily blowed their brains out. We were sitting at the crossing talking. All we wanted to do is scare them off." The jury evidently found there was not sufficient evidence of an intent to kill on the part of the defendant.

■■ Furthermore, logical consistency in verdicts is not necessary so long as the verdicts are not legally inconsistent. *People v. Joyner* (1972), 50 Ill.2d 302; *People v. Hairston* (1970), 46 Ill.2d 348.

■■■ The defendant's next contention is that a defendant's right not to be placed in double jeopardy precludes a finding of guilty on the aggravated battery charge when he was found not guilty of attempted murder. However, we believe *People v. Hairston*, 46 Ill.2d 348, is dispositive of the issue despite the defendant's attempts to distinguish it. In that case the court stated:

> " 'For a double jeopardy claim to be viable, it must be shown that the two offenses charged are in law and in fact the same offense.' (*Hattaway v. United States* (5th cir. 1968), 399 F.2d 431, 432.) 'It is the identity of the offense, and not of the act, which is referred to in the constitutional guaranty against double jeopardy; * * *.' (*People v. Ciucci*, 8 Ill.2d 619, 629, aff'd 356 U.S. 571, 2 L.Ed.2d 983, 78 S. Ct. 839.) Two or more distinct offenses may emanate from the same transaction or act, and we have consistently held that the rule that a person cannot be put twice in jeopardy for the same offense has no application where two separate and distinct crimes are committed by one and the same act. [Cases cited.]"

In the instant case the crimes of aggravated battery and attempted murder are separate and distinct, as discussed above.

■■ The defendant also suggests a theory of collateral estoppel, as defined in *Ashe v. Swenson* (1970), 397 U.S. 436, is applicable to the facts in the instant case:

> "[Collateral estoppel] stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a verdict and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."

This same argument was also made in *Hairston*. In that case the defendant contended on appeal his acquittal of murder and attempted murder, when the State proceeded on an accountability theory, was fatally inconsistent with his conviction of solicitation of those crimes. The court rejected the theory by saying:

> "But we believe the very statement of the doctrine, or principle of collateral estoppel is demonstrative of its inapplicability in this case. Defendant was tried for the separate crimes arising from his act in a single proceeding, and thus there was not, and could not be, a relitigation of an ultimate issue of the fact previously determined by a valid and final judgment. We see in *Ashe*, based as it is on the concept that the guarantee against double jeopardy 'protects a man who has been acquitted from "having to run the gauntlet" a second time,' (90 S. Ct. 1195) no manifestation or command that collateral estoppel is to be applied where separate offenses arising from the same act or transaction are tried in a single prosecution."

■■ The defendant argues that his conviction is unsupported by proof beyond a reasonable doubt because of his contention that the verdicts are logically inconsistent. On the contrary the proof supports the verdicts. Cummings was shot in the buttocks, the rear heel of his foot, and the side of his foot. The jury could have found that due to the nature of the wounds and the defendant's expertise with a gun that he did not intend to kill Cummings yet intended to commit a battery.

■■ The third argument is that one of the two counts of aggravated battery was void because it did not state the battery was done "without legal justification." It is further contended the remaining count of aggravated battery was tainted and a reversal is required. The reason is the court tendered only one verdict form for aggravated battery, although it instructed the jury relative to both counts, and it is improper to speculate as to which count the jury convicted on.

The defendant cites *People v. Whelan* (1971), 132 Ill.App.2d, 267

N.E.2d 364, in support of his argument. That case held the phrase "without legal authority" is an essential element and must be included in a valid indictment. We believe, however, that *People v. Hussey* (1972), 3 Ill.App.3d 955, which comes to the opposite conclusion, is more persuasive. The court in *Hussey* noted the judgment in *Whelan*, but reasoned as follows:

> "The offense of battery (or aggravated battery), we think is defined and charged when it is said that the accused intentionally or knowingly caused (great) bodily harm, and that the phrase 'without legal justification' neither adds nor detracts from that definition. It is implicit in the definition, indeed, it is implicit in the word 'battery'. A 'battery' which is legally justified is not a 'battery'."

This result is also in accordance with the reasoning in the case of *People v. Mills* (1970), 40 Ill.2d 4, in which the court noted that:

> "An indictment which charges an offense in the language of the statute is deemed sufficient when the words of the statute so far particularize the offense that by their use alone an accused is apprised with reasonable certainty of the precise offense with which he or she is charged."

■■ Next, the defendant contends the court erred by withholding from the jury the contents of a circular entitled, "How to Kill a Nigger and Not Get Caught." He contends this document affected his thought process and encouraged his belief his life and those of his companions were in mortal danger when they encountered the white youths. The court admitted the title into evidence but ruled the contents were highly prejudicial and did not aid in determining the issues in the case. An examination of the record indicates the defendant was given ample latitude to present his defense and his belief he was acting in self-defense. The jury was apprised of the racial tensions prevailing at the time and of the nature of the document in question. It is significant that defendant's theory of self-defense is built around the circumstances of the incident itself. He stated he fired in response to the complainant's shots, not in response to the document.

■■ Finally, the defendant contends he should have been sentenced to probation. In *People v. Taylor* (1965), 33 Ill.2d 417, the court held a court of review should not disturb the sentence unless it clearly appears the penalty constituted a great departure from the fundamental spirit and purpose of the law or was not proportioned to the offense. In the instant case the court ordered a pre-sentence investigation and had the results of that investigation before it at the hearing in aggravation and mitigation. It is clear the court did not act arbitrarily and the sen-

tence imposed was not an abuse of discretion for a violent crime such as aggravated battery.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

BURMAN and ADESKO, JJ., concur.