The People of the State of Illinois, Plaintiff-Appellee, *v.* Clifford Bradley, Defendant-Appellant.

(No. 56625;

First District (1st Division)—June 4, 1973.

Ronald P. Alwin, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis and Frederic Chaimson, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

Clifford Bradley (defendant) was charged with intimidation (Ill. Rev. Stat. 1969, ch. 38, par. 12—6(a)(1)); theft (Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)(1)) and attempt theft (Ill. Rev. Stat. 1969, ch. 38, par. 16—1(c)(1).) The second count for theft was dismissed by the State. After trial by jury, defendant was found guilty on the first and

third counts and was sentenced to three to five years in the penitentiary.

Defendant has appealed to this court contending that the first count fails to charge an offense so that the conviction thereon is void; the trial court erroneously received evidence in violation of defendant's rights against unreasonable search as protected by the fourth amendment to the United States Constitution; identification of defendant's voice was the result of suggestive procedure and the trial court failed to instruct the jury properly upon the charge of attempt theft.

No point is raised on the sufficiency of the evidence to prove guilt of defendant upon both charges beyond a reasonable doubt. However, we will state a brief summary of the testimony heard on the motions to suppress and the case in chief. The owner of a tavern received a telephone call on February 17, 1970 advising that the caller had been hired to kill him but would not do so upon payment of $2500. Within the next few days, the complaining witness received approximately 25 similar calls, all made to the same pay telephone in his place of business. The voice of each caller was the same. Threats were made to kill the witness himself, to injure his family and to burn down his place of business. The witness advised the police department after the first call.

On February 26, 1970, another call was received. By arrangement with the police, the witness agreed with the caller that he would put $1100 in a brown paper bag and leave it in a black mail box on the front porch at the outside of a certain specified address in Chicago. Acting with the police, three $1 bills, and pieces of paper cut to the same size, were placed in a paper bag. Three police officers then took possession of the bag. The serial numbers of the three bills were recorded.

The police officers testified that Officer Smith placed the bag in the mail box and then observed the box with two other officers. They saw the defendant walk up and back in front of the box until he reached in, took out the bag and went into the building. He took a key from his pocket to unlock the front door. Officer Albert pursued defendant and Officer Smith went to the rear. Smith saw the defendant climb out of a rear window with the bag in his hand and go onto the roof of an enclosed porch adjoining. In a few moments, defendant went back into the window without the bag. Officer Albert then placed defendant under arrest. Smith joined them. Defendant was given proper *Miranda* warnings which he said he understood. He told the officers that he did not know about money in the bag but he thought it contained narcotics. He said that he had placed it on the porch and he would get it for them. Officer Smith and defendant went out on the porch roof. Defendant reached under a roofing tile, recovered the bag with the marked money and handed it to the officer.

The three officers took defendant in their car to the place of business of the complaining witness. One went in and told the witness that they had the man who picked up the bag from the mail box. They asked him to come out to the car to see if the man had ever been in the tavern before the series of telephone calls had been received. As the witness and the officer approached the car, defendant said to the other policemen, "Why are you doing this to me?" or words to that effect. The complaining witness then immediately identified defendant's voice as being that of the anonymous caller. The witness also testified that defendant had been in his place of business and had used the telephone upon which the calls were received.

Defendant testified in his own behalf that the police had arrested him after he entered his apartment. He denied that he had picked up any package in the mail box. The police drove him to the complaining witness' place of business. The complaining witness came out and threatened him with a gun. The police then took him to the police station where he was beaten and kicked. The complaining witness entered the room at one time and said that he knew the defendant was not the person they were looking for. It is apparent from the above that the evidence is more than amply sufficient to prove guilt of the defendant as charged beyond reasonable doubt.

■■ Defendant's counsel first addresses himself to an alleged deficiency in the indictment. The applicable statute defines intimidation, as involved in the case at bar, as communication of a threat to inflict physical harm on person or property "without lawful authority." (Ill. Rev. Stat. 1967, ch. 38, par. 12—6(a)(1). Defendant urges that, because of omission of the quoted phrase, the indictment fails to allege a crime and is therefore void. We note that defendant never raised this issue in the trial court by preliminary motion of any kind or in his written motion for a new trial. Therefore, he may raise the point in this court for the first time only if the indictment fails completely to charge commission of a crime so that it is void. *People v. Ray*, 5 Ill.App.3d 624, 283 N.E.2d 696; also *People v. West*, 128 Ill.App.2d 63, 67, 262 N.E.2d 323.

■■ This contention regarding sufficiency of the indictment has been rejected by the Supreme Court. See *People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269 involving the quite similar phrase "without legal justification" used in the statute defining battery. (Ill. Rev. Stat. 1971, ch. 38, par. 12—3(a).) Note also the opinions by the appellate court which were affirmed by *Harvey: People v. Harvey*, 3 Ill.App.3d 774, 278 N.E.2d 417 and *People v. Hussey*, 3 Ill.App.3d 955, 279 N.E.2d 732. *Harvey* has already been followed by this court. (*People v. Gant*, 9 Ill.App.3d 774, 293 N.E.2d 20 and *People v. Hoffman*, 9 Ill.App.3d 842, 293 N.E.2d 16.)

See also *People v. White*, 7 Ill.App.3d 1084, 1090, 288 N.E.2d 705 citing the appellate court opinion in *Hussey*. Thus, *People v. Whelan*, 132 Ill. App.2d 2, 267 N.E.2d 364, cited and relied upon defendant, must be deemed supplanted by these above cited decisions. Note 294 N.E.2d at 270.

■■■ Defendant next contends that his fourth amendment rights were violated when the paper bag was seized by the police. Defendant made a motion to suppress the bag and its contents. After full hearing, the court denied this motion. It is clear from this record that defendant gave voluntary consent for the police to recover the bag and that he accompanied them to the adjoining roof for that purpose. There is no evidence of physical or other coercion. The police officers testified that defendant voluntarily offered to and did retrieve the bag. Defendant simply denied that he ever took possession of the bag. The cases hold that consent to search by the police is valid when it is freely and intelligently given and is unequivocal and specific in its nature. (*People v. Stanbeary*, 126 Ill. App.2d 244, 251, 261 N.E.2d 765.) The nature of the consent in this case and whether it complied with these requirements were issues of fact for the trial court which raised questions of credibility. By his denial of the motion to suppress, the court determined these issues against the defendant. This ruling is amply supported by the evidence. See *People v. Armstrong*, 41 Ill.2d 390, 396, 243 N.E.2d 825.

Defendant next urges that, although he was given proper *Miranda* warnings, he was not specifically informed by the police of his fourth amendment rights so that there could not have been a valid waiver of these rights prior to seizure of the paper bag. Defendant cites cases which support this theory, such as *U.S. v. Nikrasch* (7th cir. 1966), 367 F.2d 740. Our Supreme Court adheres to the contrary view as stated in *People v. Ledferd*, 38 Ill.2d 607, 610, 232 N.E.2d 684:

> "There is authority in support of this position (see, e.g., *U.S. v. Nikrasch*, (7th cir.) 367 F.2d 740) and there is authority rejecting it. (See *e.g., State v. Andrus*, 250 La. 765, 199 So.2d 867.) This court is not prepared to hold that the People must show under circumstances such as were concerned here, not only the consent by the defendant to the search, but also that he was advised of rights secured by the fourth amendment."

■■ Defendant next attempts to attack identification of his voice by the complaining witness. Defendant made a motion to suppress this identification. The trial court heard all of the evidence tendered on this motion and denied it. The police officers testified that the confrontation with the complaining witness was entirely voluntary in that the complaining witness heard defendant's voice and spontaneously identified it.

Defendant testified that he was not thus identified but was subjected to threats. Defendant had the burden of proving that the procedure at his confrontation was suggestive and unfair. See *People v. Brown*, 52 Ill.2d 94, 100, 285 N.E.2d 1, also *People v. Sanders*, 4 Ill.App.3d 494, 280 N.E.2d 269.

■■ The evidence proves amply that the identification was not suggestive or prejudicial. Identification by voice is a recognized and proper method of identifying a defendant. (*People v. Nelson*, 127 Ill. App.2d 238, 245, 262 N.E.2d 225.) The complaining witness had spoken to the previously unknown caller on the telephone approximately 25 times during a period less than ten days. Thus, he had ample and uninfluenced prior opportunity to become familiar with the caller's voice. Consequently, when the defendant voluntarily spoke to the police in the presence of the complaining witness, he himself gave the witness a fair and unsolicited opportunity to identify his voice.

Cases cited and relied upon by defendant are not pertinent here. (*People v. Sanders*, 4 Ill.App.3d 494, 280 N.E.2d 269; *Biggers v. Neil* (6th cir. 1971), 448 F.2d 91, and *Palmer v. Payten* (4th cir. 1966), 359 F.2d 199.) In *Sanders*, there were suggestive circumstances in the confrontation, the identification itself was not clear and important descriptive details given by the witness varied from the facts. In *Biggers*, the circumstances surrounding the lineup were unduly suggestive without a previous untainted and adequate observation of the defendant. These cases both involve confrontation for the purpose of obtaining visual identification; a circumstance entirely lacking in the case at bar. Here, the defendant was taken to the tavern by the police only for the owner to view him so that it might be ascertained whether defendant had ever entered the place of business before. In *Payten*, the suspect was required to repeat certain words and he was thus identified by the complaining witness. In the case at bar, the statements made by defendant which gave the complaining witness an opportunity for vocal identification were completely voluntary. Furthermore, the contention of the State that prior to the confrontation the police had sufficient evidence for an arrest and prosecution of the defendant is justified by the record. The motion to suppress was properly denied.

■■ The final point raised by defendant goes to the instructions. Defendant urges that People's Instruction No. 13, which purported to give the jurors the issues in connection with the crime of attempt theft, was fatally defective in that it failed to include the essential element of intent to obtain money in excess of $150. Defendant was represented at the trial by counsel of his own choice. No such instruction was tendered by counsel to the trial court. Under these circumstances, the court was

under no duty to give such specific instruction unless tendered by counsel. *People v. Springs,* 51 Ill.2d 418, 425, 283 N.E.2d 225.

██ There is another complete refutation of this contention. We cannot select any one or several of the instructions and consider them alone in an effort to determine their legal sufficiency. In determining the adequacy of the instructions, we must consider all of them as a unit to ascertain if they fully and fairly cover the law. (*People v. Jackson,* 116 Ill.App.2d 304, 313, 253 N.E.2d 527; *People v. Jones,* 107 Ill.App.2d 1, 10, 247 N.E.2d 40.) With this principle in mind, we have examined all of the instructions. We find that the court gave People's Instruction No. 12 defining the crime of attempt theft and specifically requiring the amount involved to be a sum in excess of $150. This instruction was properly given by the court in form as suggested in IPI-Criminal at page 62, No. 6.05. It also appears that the verdict given to the jury, and signed by it, expressly described the attempt theft as involving in excess of $150. The instructions given by the trial court were entirely proper.

We find no error in this record.

Judgment affirmed.

BURKE, P. J., and HALLETT, J., concur.